No. 10,039.

## JONES v. THE STATE.

CRIMINAL LAW.—*Cause for New Trial—Improper Evidence.—Misconduct of Jury.*—Under section 1842, R. S. 1881, where it is shown that the jury has received and considered any evidence, paper or document, not authorized by the court, such misconduct of the jury will constitute a sufficient cause for a new trial.

SAME.— *Verdict.—Affidavits of Jurors.*—In such a case, the affidavits of the jurors are not competent for the impeachment of their verdict; but they are admissible for the purpose of showing that they had not, in fact, been guilty of the apparent misconduct charged against them, in order to sustain their verdict.

From the Vanderburgh Circuit Court.

*G. V. Menzies* and *M. W. Pearse*, for appellant.

*F. T. Hord*, Attorney General, *W. H. Gudgel*, Prosecuting Attorney, and *W. B. Hord*, for the State.

HOWK, J.—At the March term, 1880, of the Posey Circuit Court, an indictment was returned charging the appellant with the murder of one James Pigg; and upon a trial there had he was found guilty as charged, and sentenced to imprisonment for life in the State's prison. Upon his appeal to this court the judgment below was reversed and the cause was remanded for a new trial. The opinion of this court, on that appeal, is reported under the title of *Jones* v. *State*, 71 Ind. 66.

After the reversal of the judgment and the appellant's re-

turn, the venue of the cause was changed, upon his application, to the Vanderburgh Circuit Court. · He was there tried by a jury, and a verdict was returned finding him guilty of murder in the first degree, as charged in the indictment, and assessing his punishment at imprisonment in the State's prison during his natural life. Over his motion for a new trial and his exception saved, the court rendered judgment against him on the verdict. From this judgment he has appealed to this court, and has here assigned as error the overruling of his motion for a new trial.

In their brief of this cause the appellant's learned counsel have first directed our attention to the *seventh* cause for a new trial assigned in the motion therefor, as follows: " 7th. Misconduct of the jury in this, that after said jury had been charged by the court, and had retired to their room under the charge of a sworn bailiff, said jury or some member thereof, to the defendant unknown, on the 18th of December, 1881, in passing through the court-room to the jury-room, said jury having first retired on the 17th day of December, 1881, took with them into the jury-room, or caused the same to be brought to them, the said jury, a volume of the Indiana Reports of the Supreme Court, known as 71st Indiana, which said volume of reports contains the decision of the Supreme Court of the State of Indiana in the case of *Prince Jones v. The State,* which case is reported in said volume No. 71, at page 66, being the same case which said jury were called, sworn and charged to try, and that said jury kept and retained said volume of reports with them, in their said jury-room, for a long space of time, to wit, for the space of one hour; all of which will more fully appear from the affidavits of Leslie Hitch and Milton W. Pearse, herewith filed in support of this cause for a new trial."

The affidavits referred to in this cause for a new trial were made part of the record by a bill of exceptions properly in the record. They showed very clearly the truth of the matters stated in the seventh cause for a new trial, and it does

not appear that any counter affidavits were filed on behalf of
the State. The affidavit of Leslie Hitch was to the effect
that he was the bailiff who had charge of the jury in this
case after they retired to their room to consider of their ver-
dict; that the jury retired, after having been charged by the
court, at about half past twelve o'clock on Saturday, the 17th
day of December, 1881; that on Sunday morning, December
18th, 1881, the jury were taken out of the jury-room for the
purpose of getting breakfast, and, both in going out and re-
turning, passed through the court-room; that about one hour
after the jury had returned to the jury-room from breakfast,
some juryman knocked on the door, and, upon affiant's open-
ing the door to enquire what was wanted, one of the jurors,
Madison J. Bray, handed him a volume of the Indiana Re-
ports, and that the affiant was unable to state how or at what
time the jury obtained possession of such volume of reports.

Milton W. Pearse stated in substance, in his affidavit, that
on Sunday morning, the 18th day of December, 1881, at
about ten o'clock, he was sitting in the circuit court-room of
Vanderburgh county, conversing with Leslie Hitch, who was
at the time the bailiff of the court in charge of the jury in
this case; that he heard a knock on the inside of the door of
the jury-room where the jury were considering of their ver-
dict; that the bailiff, Hitch, opened the door, when one of
the jurors handed a book to the bailiff, who immediately de-
livered the book to the affiant; that the book was the 71st
volume of the Indiana Reports of the decisions of the Su-
preme Court of Indiana, and contained at page 66 the re-
ported decision of the Supreme Court of the case of *Prince
Jones* v. *State of Indiana;* that the case so reported in said vol-
ume of reports, was the same case which jury had been called
to try; that Prince Jones, who was the appellant in the case
so reported, was the defendant in this case and upon the same
charge, to wit, the murder of one James Pigg; that after the
jury were charged and retired to their room on Saturday,
December 17th, 1881, the volume of reports mentioned was

lying on the table in the court-room; that affiant had been sitting in the court-room about half an hour before the said volume of reports was handed to the bailiff, and, during that time no book had been taken into the jury-room, and that he was unable to state at what time, or in what manner, the jury obtained possession of said volume of reports.

It is earnestly insisted, on behalf of the appellant, that, upon the facts stated in these affidavits, he was and is entitled to a new trial. In section 1842, R. S. 1881, it is provided as follows: "The court shall grant a new trial to the defendant for the following causes, or any of them: * * * * * * *Third.* When the jury has received and considered any evidence, paper, or document not authorized by the court. *Fourth.* When the jury has been guilty of any misconduct tending to prevent a fair and due consideration of the case."

It will be observed that the affidavits of Hitch and Pearse fail to show that the jury in this case "considered" or even read the opinion of this court on the former appeal of this cause, as reported in 71 Ind. 66. They do show, however, that, for about one hour, the jury had possession of this volume of reports containing such opinion, and ample opportunity to read and consider the same; and it could hardly be expected that the appellant could show more than this, under the law governing the deliberations of the jury. During the time the jury were deliberating on their verdict, the law will conclusively presume, unless the contrary appears, that no one was present in the jury-room except members of the jury. The affidavits of the jurors were not competent or admissible for the purpose of impeaching their verdict, by showing misconduct on the part of such jurors, or any of them, or otherwise. *Withers* v. *Fiscus*, 40 Ind. 131 (13 Am. R. 283); *Stanley* v. *Sutherland*, 54 Ind. 339. While this is so, it was competent for the State, if the facts would have warranted it, to have shown by the affidavits of the jurors, for the purpose of sustaining their verdict, that they had neither taken the 71st volume of the Indiana Reports of the decisions of this court into the

jury-room, nor procured or caused the same to brought to them, and that they had neither read nor considered the opinion of this court on the former appeal of this cause, as the same is reported in such volume. "The law is well settled, by repeated rulings of this court, that the affidavit of jurors can not be heard to impeach their verdict, but may be for the purpose of sustaining it." *Haun* v. *Wilson*, 28 Ind. 296.

It will be seen, from an examination of the opinion in *Jones* v. *State*, 71 Ind. 66, that much of the State's evidence against the appellant on the first trial of this case, is set out at length therein. Some of this evidence was held to be competent, while other evidence introduced by the State and copied in the opinion, this court decided to be incompetent, and reversed the judgment below on account of its improper admission. If, therefore, the jury trying this case, while deliberating upon their verdict, read and considered the opinion of this court on the former appeal, and the evidence, competent and incompetent, copied in such opinion, as the same is reported in 71 Ind. 66, it is very clear, we think, that in so doing the jury were guilty of such misconduct as prevented a fair consideration of the case and entitled the appellant to a new trial. Thus, in *Newkirk* v. *State*, 27 Ind. 1, it was shown by affidavit that after the jury retired to consult of their verdict they requested their bailiff to procure and bring to them a volume of Bishop's Criminal Law, and that the bailiff complied with their request; and it was held that the misconduct of the jury was such as to entitle the defendant to a new trial. The court said:

"This was evident misconduct, both on the part of the officer and jury. It is true that the Constitution makes the jury the judges of both the law and the facts in criminal cases, but they must receive their knowledge of both in a proper manner during the trial, and before they retire to deliberate on their verdict. The facts must be determined from the evidence given upon the trial, under the supervision of the court. Questions of law arising in the cause may be argued by coun-

·sel, and the trial is closed by the charge of the court to the jury, upon 'all matters of law which are necessary for their information in giving their verdict.' From these sources of. information, they must determine the law of the case, and can not be permitted to take to their room common law authorities for the purpose of ascertaining the law. Such a practice would be inconsistent with the whole theory of correct trials by jury, and would lead to the most pernicious consequences." See, also, *Cheek* v. *State*, 35 Ind. 492 ; *Eden* v. *Lingenfelter*, 39 Ind. 19 ; *Lotz* v. *Briggs*, 50 Ind. 346 ; and *Toohy* v. *Sarvis*, 78 Ind. 474.

It is claimed, on behalf of the State, that the affidavits in support of this cause for a new trial were insufficient, because they did not show that the jurors, or either of them, read or considered the opinion of this court on the former appeal, as reported in 71 Ind. 66. Under the law it was not in the power of the appellant to show by competent evidence what the members of the jury did within the privacy of the jury-room ; and surely the law would not require him, in a case where his life was at hazard, to show what he could not possibly show by legal evidence. But the State's attorneys say : "The circumstances all go to show that it was a scheme originating in the mind of some one evidently intended in appellant's behalf, to have some pretext, in case of conviction, on which to obtain a new trial. While the jury were absent at breakfast the book could have been placed in their room by others, and there is no evidence that any one of the jurors opened the book." The evidence, however, clearly shows that the jurors, improperly and unlawfully, had possession of the book within the jury-room for at least one hour. It was not possible for the appellant to show, by competent evidence, "that any one of the jurors opened the book." The jurors only knew whether or not any of them opened the book, and they could not be heard to impeach their verdict by their affidavits in behalf of the appellant, to the effect that they had opened the book and had read and considered the opinion of

this court, on the former appeal, as therein reported. On the other hand, they were competent witnesses for the State to sustain their verdict; and, if the facts would have justified them in so testifying, it may well be supposed that their counter affidavits would have been promptly filed, showing that they had never taken the book to their jury-room, and had never procured it to be taken there, and had never opened the book, nor read nor considered the opinion on the former appeal of this case, as therein reported, while such book was in their possession in the jury-room.

We are of the opinion, therefore, that the seventh cause for a new trial, above quoted, was well assigned by the appellant, and was sufficiently sustained by the affidavits therewith filed, and that for this cause the motion for a new trial ought to have been sustained.

Other questions are discussed by the appellant's counsel in their exhaustive brief of this cause, in relation to alleged errors of the court in giving and refusing to give certain instructions to the jury; but, as these supposed errors may not occur again on a new trial of this cause, we need not extend this opinion in the consideration or decision of any of the questions thereby presented.

The judgment is reversed, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—The clerk of this court will issue the proper notice for the return of the appellant to the sheriff of Vanderburgh county.