IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MUBROUCA ALLISON, | § | |
| | § | No. 661, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1407001620 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: September 14, 2016
Decided: September 28, 2016

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## ORDER

This 28th day of September, 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) On an extremely hot and humid day in July 2014, Mubrouca Allison left her two young children alone in a car while she shopped in a grocery store. First responders were called by a concerned passerby, who found the children crying and sweating. One child had vomited. The children were taken from the car, and recovered at the scene. The State charged Allison with endangering the welfare of her children. After a trial, a Superior Court jury found her guilty.

(2) Allison raises three issues on appeal. First, she argues the child endangerment statute is void as applied to her conduct. Second, she argues the

Superior Court committed plain error by permitting the State to proceed on an information that did not fairly apprise her of the charges against her. And finally, she claims that the State failed to specify the actual harm to the children as an element of the crime. After careful review, we find the issues Allison raises on appeal to be without merit. As to the first issue, a reasonable person would understand that leaving two infant children in an unlocked car in extreme heat is likely to be injurious to the children's physical, mental, or moral welfare. As to the second issue, Allison waived her claim directed to the inadequacy of the information by failing to assert it prior to trial. Further, the information was not deficient, and thus the Superior Court did not plainly err by allowing the State to proceed on it. On the last issue, we find that the State presented sufficient evidence of harm under the statute. Therefore, we affirm.

(3) On July 2, 2014, a passerby noticed two young children alone in a car parked in a grocery store parking lot. Concerned for the children because of the extremely hot and humid weather, the passerby called the police. Emergency medical technicians ("EMTs") arrived first at the scene. Police arrived several minutes later. The EMTs found the car unlocked and not running. The children, six and one year old, were crying when the EMTs approached the car. The younger child had mucus from her nose on her face and had vomited. It was 98

2

degrees outside and humid.  Two windows were rolled down a few inches, but did not provide proper ventilation.

(4)  The EMTs removed the children from the car.  They were sweating heavily and their skin was warm, but the EMTs did not believe the children were in any further danger.  About ten minutes after the police arrived, a store employee located Allison, and brought her out to the car.  Allison arranged for a guardian to take the children.  She was then arrested for criminal impersonation and two counts of endangering the welfare of a child.

(5)  After a trial before a Family Court Commissioner on February 24, 2015, Allison was found guilty on all three counts.  Allison appealed the Commissioner's findings.  The Family Court affirmed the Commissioner's findings.  Allison then appealed to the Superior Court for a trial *de novo*.  The State entered a *nolle prosequi* on the criminal impersonation charge and tried Allison on the remaining charges.  A Superior Court jury convicted her of both counts of endangering the welfare of a child.  The Superior Court sentenced her to two concurrent sentences of confinement at Level V incarceration for thirty days, suspended for one year of Level II probation.  This appeal followed.

(6)  Allison argues that Delaware's endangering the welfare of a child statute is unconstitutionally vague as applied to her conduct.  Specifically, she alleges that a person of ordinary intelligence would not understand that her conduct

was criminal. Thus, according to Allison, the State was required to present expert testimony establishing that injury was "likely." When assessing legal or constitutional claims, we apply a *de novo* standard of review.[1]

(7) "[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[2] Further, "a statute must be clear enough to notify a person of what is unlawful so that the individual will be free to choose between lawful and unlawful conduct."[3]

(8) The child endangerment statute provides that a person is guilty of endangering the welfare of a child if she has assumed responsibility over the child and "[i]ntentionally, knowingly or recklessly acts in a manner likely to be injurious to the physical, mental, or moral welfare of the child."[4] We find Allison's constitutional vagueness argument to be without merit because an ordinary person could easily understand that leaving two young children alone in an unlocked car in near triple-digit heat for at least fifteen minutes with the windows almost rolled up could be "injurious to the physical, mental, or moral welfare" of the children.

---

[1] *Ploof v. State*, 75 A.3d 840, 851 (Del. 2013).
[2] *Carlson v. State*, 902 A.2d 1114, 1118 (Del. 2006) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)).
[3] *Wright v. State*, 405 A.2d 685, 687 (Del. 1979).
[4] 11 *Del. C.* § 1102.

4

Expert testimony was unnecessary to prove what was within an ordinary person's ability to understand.

(9) Next, Allison argues that the Superior Court erred by permitting the State to proceed based on an information that failed to put her on adequate notice of the charges against her. Allison did not object to the form of the information before trial. Thus, any objections to the form of the indictment are waived.[5] Even if not waived, we would review only for plain error.[6] Error is plain when it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[7] Plain errors are "limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[8] "To be plain, the alleged error must affect substantial rights, generally meaning that it must have affected the outcome of [the] trial."[9]

(10) An information is adequate if it is "a plain, concise and definite written statement of the essential facts constituting the offense charged."[10]

---

[5] *Robinson v. State*, 953 A.2d 169, 173 (Del. 2008).
[6] *Turner v. State*, 5 A.3d 612, 615 (Del. 2010).
[7] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[8] *Id.*
[9] *Brown v. State*, 897 A.2d 748, 753 (Del. 2006) (citing to *United States v. Olano*, 507 U.S. 725, 734 (1993)).
[10] *Malloy v. State*, 462 A.2d 1088, 1092 (Del. 1983).

Generally it is sufficient that an information follow the language of the statute.[11]

The information charged Allison as follows:

> [Mubrouca Allison], on or about the 2nd day of July, 2014, in the County of New Castle, State of Delaware, being a parent guardian, or any other person who has assumed responsibility for the care or supervision of [victim], a child less than 18 years old, did intentionally, knowingly, or recklessly act in a manner likely to be injurious to the physical, mental, or moral welfare of child by leaving the child unattended in a vehicle.[12]

The information charging Allison with child endangerment tracked the language of the statute and tied the statutory language to her specific conduct. Therefore, it provided Allison with adequate notice of the charges.

(11) Allison also contends that the State failed to specify whether the potential injuries to her children were physical, mental, or moral, and thus failed to satisfy all the elements of the criminal statute. We find, however, that it was apparent that Allison's conduct raised the potential for several types of harm. In addition to the potential for the children to become dehydrated or overheated, the children were distressed and crying. Leaving young children alone in an unlocked car on an extremely hot day could likely cause physical and mental harm to the children. Also, it is sufficient if the information covers any one of the three harms covered by the statute. If Allison was unclear about what harm the State was

---

[11] *State v. Deedon*, 189 A.2d 660, 662 (Del. 1963).
[12] App. to Opening Br. at 1.

alleging under the statute, she could have it cleared up through discussions with the prosecutor or if necessary sought relief from the Court.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice